UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

EDWARD J. DOWNS,

     Debtor.

Case No. BG 16-05818
Chapter 7

_____/

LISA E. GOCHA, CHAPTER 7 TRUSTEE,

     Plaintiff,

v.

LEIGHA DOWNS,

     Defendant.

Adversary Proceeding
No. 17-80193

_____/

**OPINION REGARDING TRUSTEE'S COMPLAINT FOR AVOIDANCE AND
RECOVERY OF FRAUDULENT TRANFER**

Appearances:

Lisa E. Gocha, Esq., Hudsonville, Michigan, Chapter 7 Trustee.

Alan J. Gocha, Esq., Southfield, Michigan, attorney for Chapter 7 Trustee.[1]

David Stempfly, Esq., Holland, Michigan, attorney for Leigha Downs.

### I.      INTRODUCTION AND JURISDICTION.

In this adversary proceeding, Lisa E. Gocha (the "Trustee" or "Plaintiff") seeks to

avoid and recover a prepetition transfer from Edward Downs (the "Debtor") to his non-

debtor spouse, Leigha Downs ("Leigha" or the "Defendant") under §§ 548 and 550 of the

---

[1]     Attorney Alan J. Gocha was appointed as attorney for the Trustee by an order entered on November 7, 2018, just prior to the start of the trial in this adversary proceeding.  (AP Dkt. No. 56.)

Bankruptcy Code.[2]  The potentially avoidable transfer occurred when the Debtor withdrew retirement funds from his Thrift Savings Plan ("TSP") account and deposited them in a bank account that was owned solely by Leigha.  Just over a month later, Leigha used $10,000 of those funds as a down payment on a mobile home that became the parties' residence but was titled only in Leigha's name.

A trial was held before this court on November 7, 2018.  At the trial, the court heard testimony from the Debtor and Leigha Downs.  Both testified credibly.  The court also admitted seven exhibits into evidence.  At the conclusion of the trial, the court took the matter under advisement.  This opinion constitutes the court's findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052.

The court has jurisdiction over this bankruptcy case.  28 U.S.C. § 1334.  The bankruptcy case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); L. Civ. R. 83.2(a) (W.D. Mich.).  This fraudulent conveyance action is a statutory core proceeding.  28 U.S.C. § 157(b)(2)(H).  Both parties have consented to this court entering a final order.  *See* Amended Complaint, AP Dkt. No. 11 at ¶ 7; First Pretrial Order, AP Dkt. No. 6.

## II.     FACTS AND PROCEDURAL BACKGROUND.

### A.  *Findings of Fact*.

The facts that gave rise to this adversary proceeding occurred prior to the filing of the Debtor's bankruptcy case and are mostly undisputed.

The Debtor and the Defendant were married in November 2015.  (Transcript of

---

[2]     The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive.  Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ___."

2

Trial, AP Dkt. No. 57 at 21-22, cited herein as "Tr. at ___.") Shortly thereafter, in December of 2015, the Debtor filed a chapter 13 case in the United States Bankruptcy Court for the Northern District of Florida, where he was living at the time.

The Debtor was employed by the U.S. Postal Service for twenty-two years. (Tr. at 24-25.) He testified that, prior to their marriage, he and the Defendant lived in Florida. The Defendant was not happy there and moved home to Michigan. After they were married, the Debtor also decided to move back to Michigan and was promised a job at the post office in Rockford. That position never became available, and rather than moving back to Florida, the Debtor decided to take a deferred retirement from his job with the post office in April 2016. (Tr. at 24-25.)

Upon his retirement from the post office, the Debtor withdrew funds from his TSP account. Plaintiff's Exhibit 5 shows that the net amount of $34,503.74 ($43,129.68 less $8,625.94 in federal tax withholdings) was disbursed from the Debtor's TSP account on May 10, 2016.

The funds from the Debtor's TSP account were deposited in a bank account at Lake Michigan Credit Union that was solely in the name of the Defendant. Leigha testified that the Debtor's name had been on the account for a short time after they were married. She explained, however, that he was removed from the account after she received "a notice that said he couldn't be on [the account] anymore because he had a bankruptcy with Lake Michigan Credit Union." (Tr. at 63.) Plaintiff's Exhibit 8 is a bank statement from Lake Michigan Credit Union listing the Defendant as the owner of the account and showing a deposit of $34,503.74 being made into the account on May 12, 2016. The Defendant testified that this was the money from "Ed's retirement." (Tr. at 70.)

3

When it comes to paying normal household expenses, the Defendant testified that she and the Debtor cooperate to pay their monthly bills.  (Tr. at 81.)  Some months, she pays certain expenses; other months, the Debtor pays them.  The Defendant explained that she keeps track of the payments by making written notes in her calendar.  She stated that she and the Debtor do not have a formal arrangement or consistent way of dividing up expenses.  (Tr. at 63-65.)

The Defendant also acknowledged that she did not give the Debtor anything specific of value in exchange for the deposit of his retirement funds into her checking account.  (Tr. at 71-72.)  She testified that she and the Debtor have never had a written agreement regarding the retirement money.  (Tr. at 72-73.)  At the time the funds were deposited into her account, there was no oral agreement as to how the funds would be used or what would be given to the Debtor in exchange for the transfer.  (Tr. at 73.)

A little over a month after the TSP funds were deposited in the Defendant's bank account at Lake Michigan Credit Union, the Debtor and the Defendant decided to purchase a mobile home.  The Defendant obtained a $10,000 cashier's check, drawn on her account at Lake Michigan Credit Union, to make the down payment on the mobile home.  The cashier's check was dated June 29, 2016, and was admitted into evidence as Plaintiff's Exhibit 10.

On July 8, 2016, a Certificate of Mobile Home Ownership was issued by the State of Michigan, showing the Defendant as the sole owner of the mobile home.  (Plf. Exh. 7.) Although the trial record does not include any loan documentation, both the Debtor and the Defendant testified that the Defendant obtained a loan to pay for the balance of the mobile home.  (Tr. at 47, 85.)  Both parties confirmed that the loan was solely in the

4

Defendant's name.  (Tr. at 45, 74.)  The Debtor testified that he would have been unable to get a loan without the Defendant's assistance, because his chapter 13 case was still pending in Florida at the time the mobile home was purchased.  (Tr. at 45.)

The Debtor explained that, in his mind, he and the Defendant were purchasing the mobile home together.  (Tr. at 45.)  In effect, he provided the down payment and the Defendant obtained a loan for the balance of the purchase price.  (Tr. at 45.)  The Defendant also testified that her intent was that she and the Debtor were purchasing the mobile home together.  (Tr. at 88.)   Unfortunately for the Debtor and Leigha, this subjective intent is not reflected in the documentation.

The Debtor's chapter 13 case in Florida was dismissed on September 14, 2016. (Plf. Exh. 2.)  The Debtor filed his chapter 7 bankruptcy case in this court on November 18, 2016.  Lisa E. Gocha was appointed as the Chapter 7 Trustee in the Debtor's case.

B.  *Procedural History*.

Unlike the straightforward prepetition facts, the procedural history of this adversary is extremely tortured.  Given the difficulties, errors, and general carelessness that has occurred, the United States Trustee could use this proceeding at its annual Best Practices seminar as an example of pretrial litigation pitfalls and trial advocacy strategies to avoid. The relevant portions of the procedural record in the adversary proceeding are as follows:

On November 29, 2017, the Trustee filed the original complaint in this adversary proceeding seeking to avoid a transfer from the Debtor to Leigha in the amount of $5,000. According to the complaint, this represented "one half of the down payment in the amount of $5,000 . . ." on the mobile home, which was "provided by the Debtor" and which the Trustee identified as the operative "transfer."  (AP Dkt. No. 1.)  Count 1 sought avoidance

5

of the transfer pursuant to "11 U.S.C. 528 [sic]," and Count 2 sought recovery of the $5,000 transfer from Leigha as an initial transferee. *See* 11 U.S.C. § 550. The Defendant answered, essentially claiming that she and the Debtor purchased the mobile home together and that she gave fair consideration in exchange for the transfer. (AP Dkt. No. 4.)

The original complaint contained many material typographical errors. For instance, the complaint alleged that the adversary proceeding was a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (F), and (O), but did not allege that it was a core proceeding under 28 U.S.C. § 157(b)(2)(H), which applies to "proceedings to determine, avoid, or recover fraudulent conveyances." The complaint cited "11 U.S.C. 528" as the basis for the avoidance claim, instead of 11 U.S.C. § 548. Because of these typographical errors, the court's First Pretrial Order (AP Dkt. No. 6) required the Trustee to amend her complaint by no later than March 1, 2018. The First Pretrial Order also provided that the amended complaint should include more specificity regarding how and when the transfer occurred (i.e., how the money moved from the Debtor to Leigha).

Five days <u>after</u> the March 1, 2018, deadline, the Plaintiff attempted to amend her complaint. (AP Dkt. No. 8.) However, upon filing, the Clerk issued Notice of Defective Filing because the amended complaint, which was intended to remedy typographical problems, used the wrong base case number and the wrong judge's initials in the caption. (AP Dkt. No. 10.)

On March 7, 2018, now six days <u>after</u> the March 1, 2018 deadline, the Plaintiff filed a properly captioned amended complaint. (AP Dkt. No. 11.) The amended complaint addressed the issues identified in the First Pretrial Order. The Plaintiff also shifted course

slightly, now claiming that the entire $10,000 down payment for the mobile home was the operative transfer.   The amended complaint asserts that this transfer "occurred approximately five months" prepetition but does not give an exact date.  The amended complaint also states that there may have been other transfers made by the Debtor to the Defendant prior to the bankruptcy filing.  It includes a vague allegation seeking to "recover any other transfers made by the Debtor to the Defendant, which may be recoverable under 11 U.S.C. §548 or another applicable sections [sic] of the Bankruptcy Code," but provides no detail as to the amount or timing of any such transfers.  Like the original complaint, the amended complaint includes a second count seeking recovery of "the value of the transfers from the initial transferee and any immediate or mediate [sic] of the initial transferees under the provisions of 11 U.S.C. §550."

On March 13, 2018, the Defendant filed a Motion to Dismiss, not for failing to state a claim or any other reason set forth under Fed. R. Civ. P. 12(b) (made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012), but because the Plaintiff missed the March 1, 2018 deadline for amending her complaint.  (AP Dkt. No. 12.)  On March 14, 2018, the Defendant also filed an answer to the amended complaint, admitting that the Debtor withdrew funds from his retirement account, but denying that the funds were "transferred" to the Defendant because the bank account into which they were deposited was considered by the parties to be a joint account and that, to the extent a transfer occurred, consideration was provided by Leigha to the Debtor.  (AP Dkt. No. 13.)

On April 12, 2018, the court held a hearing on the Motion to Dismiss and denied it for the reasons set forth on the record.  An order was entered on April 18, 2018.  (AP Dkt. No. 19.)

7

On April 27, 2018, the court entered its Second Pretrial Order.  The Order required dispositive motions to be filed by July 13, 2018.  (AP Dkt. No. 20.)  The Plaintiff filed her "Motion for Partial Summary Judgment on the Pleadings" on July 10, 2018.  (AP Dkt. No. 23.)  Three days later, on July 13, 2018, the Defendant filed her cross Motion for Summary Judgment.  (AP Dkt. No. 24.)  The gist of the Plaintiff's motion was that "[t]he Debtor's payment of Defendant's portion of the down payment for the Mobile Home clearly qualifies as a transfer within the meaning of 11 USC 548."  The Defendant's motion was based on her argument that value was given in exchange for the alleged transfer, and that the value was reasonably equivalent.

The parties filed responses to the motions.  (AP Dkt. Nos. 27 and 28).  The court conducted a hearing on August 30, 2018.  After hearing oral argument from the parties, the court denied both motions because material facts existed concerning: (1) what transfer the Plaintiff sought to avoid, (2) whether value was given for the transfer, and (3) if so, whether the value was reasonably equivalent value.   In short, although the parties at the hearing continued to identify the operative transfer as the $10,000 down payment made by Leigha on the mobile home, the facts showed that the down payment was not a payment made by the Debtor, but instead a payment made by the Defendant to purchase the mobile home.  At the same time, the parties effectively ignored the initial withdrawal of approximately $34,000 from the Debtor's retirement account and the transfer of same to the Defendant.  The Trustee acknowledged that the initial transfer of $34,000 was "technically" when the transfer of the Debtor's interest in the retirement funds occurred but explained that she "didn't feel that was significant" because Leigha wrote several checks back to the Debtor after the funds were deposited into her account.

8

(Transcript of Summary Judgment Hearing, AP Dkt. No. 36, at 15-16.)  Accordingly, for

purposes of the summary judgment motion, the Trustee was only seeking to recover

$5,000 – which, she reasoned, represented the portion of the down payment on the

mobile home that was essentially made by the Debtor solely for the benefit of his wife.

On September 6, 2018, the court entered its Final Pretrial Order and Trial Notice.

(AP Dkt. No. 30.)  In the order, the court required the parties to file legal memoranda.  The

order stated:

> Each party shall file a memorandum of legal authorities and argument with
> the court, and serve a copy upon opposing counsel, on or before **October
> 22, 2018**.  The parties' legal memoranda shall address each element of the
> Plaintiff's fraudulent transfer cause of action under 11 U.S.C. § 548, and
> shall specifically identify:
>
> a.    The transfer of "an interest of the debtor in property" that the Plaintiff
>       seeks to avoid, including the amount of the alleged transfer and the
>       date on which the alleged transfer occurred;
>
> b.    What value the Defendant received in exchange for the transfer;
>
> c.    Whether any such value constituted "reasonably equivalent value"
>       under 11 U.S.C. § 548(a)(1)(B)(i);
>
> d.    Whether the Debtor was insolvent at the time of the transfer, or
>       otherwise satisfied the requirements of 11 U.S.C. § 548(a)(1)(B)(ii);
>
> e.    The basis on which the Plaintiff is seeking recovery from the
>       Defendant under 11 U.S.C. § 550 (i.e., whether the Defendant was
>       the initial transferee of the transfer).

(AP Dkt. No. 30.)

The Plaintiff filed her trial brief on October 22, 2018 (AP Dkt. No. 40), and the

Defendant filed her brief on October 23, 2018 (AP Dkt. No. 42).  In her brief, the Plaintiff

argued there are two dates the court may consider as the date of the transfer, "although

the result remains the same."  (Trustee's Trial Brief at 3.)  The two dates were the date

9

the Debtor deposited his retirement funds into the Defendant's account or the date the Defendant used the funds for the down payment on the mobile home.  In her Statement of Facts, the Trustee asserts that the Debtor deposited his retirement funds into the Defendant's bank account on May 14, 2016.  (Trustee's Trial Brief at 1-2.)  The brief also states that "[s]ubsequent to the deposit, certain checks were written back to the Debtor, which he used to pay taxes, among other things, but on June 29, 1016 [sic], the Defendant wrote a check from her bank account in the amount of $10,000 for the down payment on the purchase of a 2002 Dutch Mobile Home."  (Trustee's Trial Brief at 2.)  The Trustee asserts that the $10,000 was "directly traceable to the Debtor's retirement funds," and explains that she brought the instant adversary proceeding seeking "to void the transfer of the $10,000, which was used by the Defendant to purchase an asset, in her name alone."  (Trustee's Trial Brief at 2.)  In her conclusion, the Plaintiff again argues that she will prove at trial that she has satisfied all elements of 11 U.S.C. § 548 and that she will be able to "avoid the transfer of the $10,000 used as a down payment on the Defendant's Mobile Home." (Trustee's Trial Brief at 5.)

Prior to the commencement of the November 7, 2018, trial, the court inquired of counsel whether they wished to address any preliminary matters, including any stipulations.  The Defendant stipulated that "for all the relevant times . . . the debtor was insolvent." (Tr. at 11.)  The relevant times included when the Debtor withdrew the funds from the TSP account, and when the Defendant made the down payment on the mobile home.  (Tr. at 11-12.)

However, when it came to identifying the transfer the Trustee was seeking to avoid, counsel for the Defendant indicated his belief that the only transfer at issue was the

10

second transfer, the down payment on the mobile home. (Tr. at 12.) In support of this understanding, Defendant's counsel stated that he was relying on the Final Pretrial Order, which required the Plaintiff to identify the transfer she was seeking to avoid, the date of the transfer, and the amount of the transfer, and on the Plaintiff's Trial Brief in which she requested a judgment for $10,000. (Tr. at 12, 14.) The Trustee argued that she did not intend to limit the relief requested to $10,000, and that neither the amended complaint nor her trial brief limited her request to the $10,000 down payment. (Tr. at 13-14.)

## III.   DISCUSSION.

Before the court considers the merits of the Trustee's fraudulent transfer claim, it must first identify exactly what cause of action the Trustee has asserted and what specific relief she has sought. The Trustee has been inconsistent in articulating two of the most fundamental elements of her avoidance and recovery claims: (1) what transfer she seeks to avoid under § 548 and (2) the value of the property transferred which she seeks to recover under § 550. Given the number of opportunities the Trustee has been afforded to more clearly state her claims – both by amending her complaint and in response to the Final Pretrial Order – identifying the transfer at issue and the damages sought should be an easy task. Instead, the confusion and uncertainty caused by the Trustee's failure to accurately define the operative transfer persisted through the conclusion of trial and has unnecessarily complicated what should have been a straightforward fraudulent conveyance claim.

The federal procedural rules that apply in this adversary proceeding[3] set forth

---

[3]     The Federal Rules of Civil Procedure cited herein are made applicable to this adversary proceeding by the corresponding Federal Rules of Bankruptcy Procedure. *See, e.g.*, Fed. R. Bankr. P. 7008 (General Rules of Pleading); Fed. R. Bankr. P. 7015 (Amended and Supplemental

11

numerous "procedural techniques" for giving notice of the nature of claims and defenses, identifying the relevant facts, narrowing the issues to be litigated, and providing a means for speedy disposition of unmeritorious claims. *See* 5 Charles Alan Wright et al., *Federal Practice & Procedure Civil* § 1202 (3d ed. 2018) (explaining that some of these functions, which were served by pleading rules prior to the enactment of the Federal Rules of Civil Procedure, are now served by separate procedural rules such as those governing discovery or motions for summary judgment). Analysis of the Trustee's claim requires the court to trace the chronology of the cause of action she has asserted in light of the procedural rules that applied at each stage of this proceeding.

At the outset of litigation, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007) (citing Rule 8 and *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). Rule 8(a)(3) also requires the pleader to assert "a demand for the relief sought, which may include relief in the alternative or different types of relief." In this proceeding, the Trustee's complaint and amended complaint both identified the down payment on the mobile home as the operative transfer. The Trustee's demand for relief sought recovery of either $5,000 or $10,000 as result of avoiding this transfer. The amended complaint suggests that there may have been other avoidable transfers, but provides no supporting factual allegations, such as the amount or timing of those potential transfers.

---

Pleadings); Fed. R. Bankr. P. 7016 (Pre-trial Procedures); Fed. R. Bankr. P. 7054 (Judgment; Costs). For ease of reference, citations in this opinion are solely to the applicable Federal Rules of Civil Procedure.

As litigation progresses and discovery continues, the Rules provide that leave to amend the pleadings to add new claims should be "freely" given "when justice so requires." *See* Fed. R. Civ. P. 15(a) (discussing pre-trial amendments). Rule 15(b) contemplates that amendments may even be made during or after trial so long as the opposing party is not prejudiced by the amendment or if an issue is tried by implied consent.  Although the Trustee could have requested leave to amend her pleadings to include the initial $34,000 transfer from the Debtor to Leigha, she has never done so.[4] Through the summary judgment phase, the Trustee continued to assert that the avoidable transfer was the "Debtor's payment of the Defendant's portion of the down payment" on the mobile home and that the appropriate remedy was recovery of one half of the down payment in the amount of $5,000.

After the court denied the parties' motions for summary judgment, it conducted a final pretrial conference and issued a final pretrial order.  The Rules provide that the pretrial order "controls the course of the action" unless modified by the court, and that a final pretrial order may only be modified "to prevent manifest injustice."  Fed. R. Civ. P. 16(d) & (e).  Based on these rules, courts generally hold that the parties are bound by any stipulations, statements of issues or claims, or other provisions included in a pretrial order.  *See* 6A Charles Alan Wright et al, *Federal Practice & Procedure Civil* § 1527 (3d ed. 2018).  Conversely, issues or theories that are not raised at a pretrial conference, reflected in a pretrial order, or identified in a party's pretrial statement may be considered

---

4       Even if the court were to construe the Trustee's statements prior to the start of trial as an informal oral motion to amend, the court cannot conclude that the issues regarding avoidance of the initial transfer, in the full amount, were tried by implied consent.  Defendant's counsel clearly objected to the expansion of issues beyond what was argued in the Trustee's Trial Brief in his statements prior to the start of the trial.

to be waived.  *See, e.g., Ghandi v. Police Dept. of the City of Detroit*, 823 F.2d 959, 962 (6th Cir. 1987) ("[A]n attempt to pursue any issue not listed in the [pretrial] order may be rejected by the trial court.") (citations omitted); *McKinney v. Galvin*, 701 F.2d 584, 585-86 (6th Cir. 1983) ("A party's failure to advance theories of recovery in the pre-trial statement constitutes waiver.") (citations omitted).  In this proceeding, the court did not state the relevant issues in its Final Pretrial Order; instead, after observing the parties' inability to identify the operative transfer at the summary judgment phase, the court instructed the Trustee to "specifically identify" the transfer she was seeking to avoid, including the date on which it occurred and the amount, in her Trial Brief. *See* Final Pretrial Order and Trial Notice, AP Dkt. No. 30.

The Trustee's Trial Brief acknowledges, for the first time, that there are actually two transfers that might be avoided – the initial transfer of over $34,000 into the Defendant's bank account and the $10,000 down payment on the mobile home.  Even so, the Trustee's demand for relief was "the same": avoidance of the transfer of the $10,000.  The Plaintiff never even hinted that she was seeking to recover the $34,503.74 transferred from the Debtor to Leigha.  To the contrary, the Trustee's Trial Brief suggests that unspecified amounts had been returned to the Debtor after funds were deposited in Leigha's account, presumably making it inappropriate to seek avoidance and recovery of the full amount.  Then, at trial, the Trustee abruptly changed course and argued that she was seeking avoidance and recovery of the initial transfer of the Debtor's retirement funds in the total amount of $34,503.74.

The court will not sanction the Trustee's "trial by ambush" tactics.  Because the Trustee's brief identified both the $34,000 initial transfer and the $10,000 down payment

14

as potentially avoidable, the court finds that it is appropriate to consider both of these transfers in its analysis of the Trustee's cause of action. However, the court shall limit any avoidance and recovery to $10,000, which is exactly what the Trustee asked for in her Trial Brief. The Defendant would be clearly prejudiced by expansion of the Plaintiff's claims beyond this amount at this stage of the litigation. Based upon the pleadings in this adversary proceeding, including the Trustee's Trial Brief, the Defendant was on notice that Plaintiff sought to avoid only a $10,000 transfer under § 548. Had the Defendant been aware that the Trustee was seeking to recover not just $10,000 but $34,503.74, the Defendant's trial strategy might have been significantly different. Perhaps Leigha would have considered filing her own bankruptcy petition prior to trial. Perhaps Leigha would have engaged in more robust discovery concerning the transfer and what value, if any, might have been provided by Leigha to the Debtor. Perhaps the Defendant would have mounted a more aggressive legal defense, including raising the question of whether transfer was avoidable in the first place because the transferred funds were comprised of the Debtor's retirement funds, which perhaps would not have been property of his bankruptcy estate, or might not have been reachable by the Debtor's creditors. Perhaps the Defendant would have offered more specific evidence of amounts that were transferred back to the Debtor after the initial deposit into Leigha's account. Perhaps more fruitful settlement discussions would have occurred. The court can only speculate about how the Defendant would have reacted had she known, given the facts here, that she could be liable for over $34,000.[5]

---

[5]   The court notes that in some instances, it may be appropriate to award a party relief that is different in type or amount from what is requested in the party's pleadings. *See* Fed. R. Civ. P. 54(c) (requiring final judgments, other than those entered by default, to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); *Abrams v.*

For these reasons, the court will consider the merits of the Trustee's fraudulent transfer claim and will award her the relief she is entitled to based upon the evidence at trial, but will limit the relief awarded to no more that $10,000.

A.  *Avoidance Under 11 U.S.C. § 548*.

Section 548(a)(1)(B) gives a trustee the right to "avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor . . . received less than a reasonably equivalent value in exchange for such transfer or obligation, and  . . . was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . ." 11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I).  The Trustee bears the burden of establishing each of the statutory elements by a preponderance of the evidence.  *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F. App'x 337, 341 (6th Cir. Aug. 17, 2006) (citations omitted).

---

*Nucor Steel Marion, Inc.*, 694 F. App'x 974, 984-85 (6th Cir. May 25, 2017) (explaining that this rule "allows courts to give a deserving party a type of relief which their pleadings did not demand" but stating that this rule is not without limitation:  "The relief must be based on what is alleged in the pleadings and justified by plaintiff's proof, which the opposing party has had an opportunity to challenge.") (citing 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2262 (3d ed. 1998)).

This is not such an instance.  Here, the Trustee's failure to identify the transfer at issue constitutes a failure to accurately plead an essential prima facie element of her fraudulent transfer cause of action.  Likewise, in this fraudulent transfer case, the value, or lack thereof, received in exchange for the transfer and the value of the property which the Trustee seeks to recover are necessary elements of the causes of action.  In this case, abruptly seeking to avoid and recover the initial transfer in the full amount of $34,000, rather than $10,000, is not simply a matter of seeking additional damages or a different type of relief under Rule 54(c).  It is a fundamental change in the Trustee's claim that is not only inconsistent with statements in her own Trial Brief, but is also clearly prejudicial to the Defendant.

*1. Was there a transfer of an interest of the debtor in property?*

The Bankruptcy Code defines a "transfer" as including "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). What constitutes an "interest of the debtor in property" is not specifically defined in the Code. Other sections of the Code define property interests broadly. Section § 541(a)(1), for example, provides that "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The Supreme Court has interpreted this provision as including in a debtor's estate 'that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings.'" *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002) (quoting *Begier v. IRS,* 496 U.S. 53, 58, 110 S. Ct. 2258 (1990)).

As previously explained, the parties have struggled to address many of the fundamental issues regarding the Trustee's avoidance claim, including the very basic question of which transfer is to be avoided. However, because only one of the transfers identified by the Trustee, the initial transfer of the retirement funds to the Defendant's bank account, could possibly constitute a "transfer of an interest of the debtor in property," the court has focused its analysis on that transfer.

The Defendant argues that the transfer of funds from the Debtor's separately held retirement account to the bank account solely in her name did not result in the Debtor "parting with" or "disposing of" an interest in property. Essentially, the Defendant argues that the Debtor retained an ownership interest in the funds because the bank account would have been considered a martial asset in a divorce case.

17

The Defendant's argument is not consistent with established case law regarding the nature of marital property interests and the ability of married individuals to own separate property. "During a marriage, either spouse may own property individually and may use or dispose of that property without interference from the other spouse." *Moyer v. Slotman (In re Slotman)*, 2013 WL 7823003, *6 (Bankr. W.D. Mich. Dec. 5, 2013) (citation omitted). "While the parties are married, the marital property interest of one spouse in property owned by the other spouse is inchoate." *Id*. at *8. "However, upon the filing of divorce proceedings, the marital estate is created, and each spouse's interest in marital property vests, i.e., comes into existence." *Id*. There was no evidence introduced to show that the Debtor and Leigha had commenced divorce proceedings at any time.

Here, the Debtor's testimony and Plaintiff's Exhibit 5 established that the Debtor owned funds that were deposited in his Thrift Savings Plan, and that on May 10, 2016, Debtor withdrew his funds from his Thrift Savings Plan. The amount withdrawn was $43,129.68; however, after federal taxes were withheld, the Debtor received a net distribution of $34,503.74.

Plaintiff's Exhibit 8 established that this amount – $34,503.74 – was deposited in Leigha's Lake Michigan Credit Union account on May 12, 2016. The account is in Leigha's name only; no evidence was presented to refute Leigha's sole ownership of the account, and she conceded that only her name was on the account at the time the funds were transferred into it. Therefore, the transfer of the retirement funds into Leigha's account was a transfer of the Debtor's interest in property.

18

*2. Did the transfer occur within 2 years before the date of the filing of the petition?*

The deposit of the $34,503.74 of the Debtor's retirement funds into the bank account owned solely by the Defendant occurred on May 12, 2016.   *See* Plaintiff's Exhibit 8.  The Debtor's bankruptcy case was filed on November 18, 2016.  Thus, the transfer clearly occurred within 2 years before the date of the filing of the petition.

*3. Did the Debtor receive less than reasonably equivalent value in exchange for the transfer?*

"Less than a reasonably equivalent value" is not defined under the Bankruptcy Code.   The bankruptcy court for the Eastern District of Michigan succinctly summarized the appropriate test in 2015:

> The determination of reasonably equivalent value is typically a question of fact. See *In re Humble,* 19 Fed. Appx. 198, 200 (6th Cir. 2001) (unpublished) (analysis of reasonably equivalent value is based upon the facts and circumstances of each particular case). Courts undergo a two-step analysis to determine reasonably equivalent value. First, the Court determines whether Debtor received *any* value in exchange for the transfers. *In re Leonard,* 454 B.R. 444, 455 (Bankr. E.D. Mich. 2011).
> . . . .
> If Debtor did receive value for the transfers, the Court then determines whether the value received was reasonably equivalent. *In re Leonard,* 454 B.R. at 455.

*Shapiro v. Smorra-Kesteloot (In re Kesteloot)*, 2015 WL 4040190, at *3-4 (Bankr. E.D. Mich. June 30, 2015).

Accordingly, this court must first determine whether the Debtor received any value in exchange for the transfer of his retirement funds.  The Bankruptcy Code defines value to mean "property, or satisfaction or securing of a present or antecedent debt of the debtor," but specifically states that value "does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).

19

Although the "totality of the circumstances" may be considered in the analysis of the reasonable equivalence of the value received in exchange for a transfer, a court should not consider the totality of the circumstances in evaluating the threshold question of whether any value was received at all." *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212 (3d Cir. 2006) (citing *In re R.M.L., Inc.*, 92 F.3d 139, 150 (3d Cir. 1996)).  Instead, the court "must consider whether 'based on the circumstances that existed at the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor." *Id.* (quoting *R.M.L., Inc.*, 92 F.3d 139,150 (3d. Cir. 1996)).

As explained in *Collier on Bankruptcy*, value may include certain types of enforceable executory promises, but unperformed contracts for support are explicitly excluded:

> The statute is clear that value "does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor."  11 U.S.C. § 548(d)(2)(A).  This is a policy choice that certain promises, enforceable under nonbankruptcy law, may be too ephemeral or malleable to count as value when the debtor gives up property creditors potentially could look to for satisfaction of their debts.  *See, e.g.*, *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 530–32 (6th Cir. 2003) (finding that admittedly fraudulent transfers to mother-in-law were held by her and used to provide future support for debtors); *Simione v. Nationsbank of Del., N.A. (In re Simione)*, 229 B.R. 329, 335 (Bankr. W.D. Pa. 1999) (stating that "where a conveyance of property is made in consideration of an agreement to support the grantor in the future, it is invalid as to creditors").

*Collier on Bankruptcy* ¶ 548.03[5] & n. 71-72 (Richard Levin & Henry J. Sommer eds., 16th ed. 2018).

In her Trial Brief, the Defendant argues that value was given in exchange for the transfer because the Debtor "received exactly one half the dollar value of the mobile home, at all relevant times."  (Defendant's Trial Brief at 4.)  In essence, the Defendant asserts that the mobile home was purchased jointly with the Debtor's funds and "the

20

Defendant's good credit." (*Id.*)  As a result, the Defendant suggests that "at all times" each party "had a ½ interest in the mobile home and any increase in value therein." (*Id.*) However, that argument belies the facts in this case.   The mobile home was purchased on or about June 29, 2016, forty-eight days after the transfer of the Debtor's retirement funds into Leigha's account.   At the time of the transfer into Leigha's account, there was no enforceable agreement between the Debtor and Leigha to purchase the mobile home, nor was there any agreement by Leigha to provide anything else to the Plaintiff.  At trial, the Debtor admitted that when the funds were deposited there was no agreement between the parties as to what the Debtor would receive in exchange for the $34,503.74. Similarly, to the extent Leigha argues that she was providing support to the Debtor – in the form of providing housing to him or incurring a loan for the remaining balance of the mobile home – at the time of the transfer, this would have been an unperformed promise to provide future support, which again is specifically excluded from the definition of value.

The court notes that the Trustee argued, in both her Trial Brief and at the summary judgment hearing, that "a portion of the funds were returned to the Debtor and may have been used for his benefit." (Trustee's Trial Brief at 3.)  However, neither the Trustee nor the Defendant offered any evidence at trial to support this assertion or establish the amounts that may have been returned to the Debtor.  As previously discussed, the Defendant may not have thought it necessary to present proofs of these amounts because she assumed, based on the Trustee's pleadings and Trial Brief, that only $10,000 was at issue.  Regardless, the record is entirely devoid of evidence from which the court could determine what amounts were returned to the Debtor.

21

Based upon the testimony and the exhibits admitted at trial, the court finds that the Debtor did not receive any value in exchange for the transfer of funds to Leigha. Therefore, there is no need to delve into the second inquiry regarding whether any value was reasonably equivalent.

4. *Was the Debtor insolvent when the transfer occurred, or rendered insolvent as a result of the transfer?*

The Bankruptcy Code defines "insolvent" as a "financial condition such that the sum of [an] entity's debts is greater than all of such entity's property, at fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32). At trial, the Defendant conceded that the Debtor was insolvent at the time of the transfer. Therefore, the court finds that the Debtor was insolvent.

For these reasons, the court concludes that the Debtor transferred his property to the Defendant, Leigha Downs, without receiving value in exchange for the transfer, within two years of the bankruptcy petition, and while he was insolvent. The Trustee is entitled to avoid the transfer as constructively fraudulent pursuant to § 548(a)(1)(B). However, as discussed previously, the amount of the avoidable transfer shall be limited to $10,000, which is the amount referenced in the Trustee's Trial Brief.

B. *Recovery of the Transfer under 11 U.S.C. § 550.*

The court must next consider whether, and to what extent, the avoided transfer may be recovered from the Defendant. Section 550 of the Bankruptcy Code provides that, when a transfer is avoided under § 548, "the trustee may recover, for the benefit of

22

the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer or the entity for whose benefit such transfer was made . . . ." 11 U.S.C. § 550(a)(1).

There is no dispute that the transfer of the Debtor's retirement funds was made to a bank account that was owned solely by Leigha. As a result, Leigha was the initial transferee of the transfer. The Trustee is entitled to recover the property transferred, or its value, from Leigha. Again, the amount that the Trustee is entitled to recover shall be limited to the $10,000 she requested in her Trial Brief.

## IV.   CONCLUSION.

For the reasons stated in this opinion, the court concludes that the transfer of funds from the Debtor to the Defendant's bank account is avoidable as constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) in the amount of $10,000. The Trustee is entitled to recover the $10,000 from the Defendant, who was the initial transferee. A separate judgment will be entered accordingly.

**IT IS SO ORDERED.**

**Dated February 15, 2019**





James W. Boyd
United States Bankruptcy Judge